(94 South. 401)

No. 25358.

## STATE v. BROWN.

(Oct. 30, 1922.   Rehearing Denied Nov. 27, 1922.)

*(Syllabus by Editorial Staff.)*

**1. Jury ⬅59(1)—Failure to spread order appointing commissioner on the minutes does not affect right to qualify and act.**

The provision of Jury Act 1898, § 3, requiring the order appointing a jury commissioner to be spread on the minutes is only directory, and failure to comply therewith does not affect the commissioner's right to qualify and act thereunder.

**2. Criminal law ⬅400(2)—When order appointing jury commissioner has been lost, it may be proved by parol.**

Where an order appointing a jury commissioner was not recorded and had been lost, its existence and contents could be proved by parol on motion to quash indictment on ground that disqualified commissioner helped to select the grand jury after proof that the document existed, and that due, but futile, efforts had been made to produce it.

**3. Jury ⬅59(1)—When jury commissioner appointed for entire parish, reference in oath to particular ward held surplusage.**

In determining the sufficiency under Const. 1913, art. 161, and the Jury Act 1898 of the oath taken by one appointed jury commissioner by which he undertook to discharge the duties of the office "in and for ward 5" of a particular parish, the oath must be read in connection with the order of appointment and the law prescribing the commissioner's duties, and, where he was undoubtedly appointed to act for the entire parish as the law required, the quoted words may be treated as surplusage, as neither he nor any one else could limit or change the nature or extent of such duties.

**4. Criminal law ⬅589(5)—Not ground for continuance that some jurors on list furnished had been excused or were serving in another case.**

It was not ground for delaying or postponing the trial of a murder case that some of the jurors were serving on the jury in another case and others had been excused, though, as a result, only six jurors were obtained from those on the list furnished defendant.

152 LA.—26

**5. Criminal law ⬅1169(1)—Exclusion of evidence which, if relevant, was exceedingly remote and apparently hearsay, not reversible error.**

On a trial for murder, the exclusion of testimony that a witness' son took another person to deceased's funeral, offered to establish with greater accuracy the time that defendant was at a certain place and its relation to the time when the body was found, was not reversible error, as its relevancy did not appear, and, if relevant, it was exceedingly remote and apparently open to the objections that it was hearsay, and that it did not, as claimed, refresh the recollection of the witness about her presence at a certain place, where she had testified positively thereto.

**6. Criminal law ⬅683(4)—Evidence tending to contradict defendant's statements as to alibi held admissible in rebuttal.**

Where accused sought to prove an alibi, any evidence tending to contradict his statements as to where he was at any time near the date of the homicide was relevant in rebuttal.

**7. Criminal law ⬅683(4)—Testimony in rebuttal not changing testimony in chief not inadmissible as contradicting, modifying or bolstering up testimony.**

Where testimony in rebuttal that a witness saw defendant at a certain place at a certain time did not in any way change his testimony as given in chief, it was not inadmissible on the ground that he could not contradict, add to, modify, or bolster up his testimony.

**8. Criminal law ⬅825(4), 844(1)—Instruction on circumstantial evidence held good in absence of specific exception or request for further instructions.**

On a trial for murder, an instruction as to the effect to be given circumstantial evidence *held* sufficient when merely excepted to without pointing out omissions or requesting further charges, though it did not specifically tell the jury to consider such evidence "with caution."

**9. Criminal law ⬅1038(3), 1059(2)—When charge good as far as it went, mere exception without pointing out omissions or requesting further charges held insufficient to warrant setting aside verdict.**

Where a charge on circumstantial evidence stated the law correctly as far as it went, a mere exception without pointing out omissions or requesting charges thought necessary was

insufficient to warrant the setting aside of the verdict after accused had taken his chances of acquittal.

**10. Criminal law ⊜⇒1156(3)—Denial of new trial moved for on ground of newly discovered evidence on accused's affidavit alone not disturbed.**

Where a motion for a new trial on the ground of newly discovered evidence was supported only by accused's affidavit, and not by the affidavits of the alleged newly discovered witnesses, the Supreme Court would not be justified in disturbing the ruling of the trial court denying the motion.

**11. Criminal law ⊜⇒911—Wide discretion given trial court respecting new trial.**

A wide discretion is vested in the trial court in the matter of granting or refusing new trials.

Appeal from Fourth Judicial District Court, Parish of Lincoln; J. B. Crow, Judge.

George Brown was convicted of murder, and he appeals. Affirmed.

Howard B. Warren, of Ruston, and Moss & Peters, of Winnfield, for appellant.

A. V. Coco, Atty. Gen., E. A. O'Sullivan, Sp. Asst. Atty. Gen., and S. L. Digby, Dist. Atty., of Farmerville (T. S. Walmsley, of New Orleans, of counsel), for the State.

By the WHOLE COURT.

DAWKINS, J. Defendant was convicted of murder without capital punishment, and from a sentence of life imprisonment prosecutes this appeal, relying upon nine bills of exception for a reversal of the judgment of the court below.

### Opinion.

The first four bills may all be treated together, for the reason that they all involve the qualification of one of the jury commissioners.

Bill No. 1 covers the overruling of a motion to quash the indictment on the ground that the said commissioner, according to the minutes of the court, had not been ap-pointed and qualified as such, thereby invalidating the grand jury which he helped to select. Upon the trial of this motion, no record of the appointment appearing on the minutes, the counsel for the state proved by the judge and a former deputy clerk that an order appointing the commissioner had been made and signed, and that it had been delivered to the clerk; and, having shown that the same had been lost or destroyed, the court permitted the state to prove its contents, that is, that it named G. W. Brewster, whose qualifications were assailed, a member of the jury commission for Lincoln parish. Bill No. 2 was to the overruling of an objection by the defense to a question propounded to the judge to show that he had issued the order, for the reason, as contended by counsel for accused, parole was not admissible to prove the official acts of the court or to supply any deficiency in the minutes thereof; while bill No. 3 was to the overruling of like objection to a similar question propounded to the deputy clerk. Bill No. 4 was reserved to the admitting in evidence, on trial of the motion to quash, of the oath of said Brewster as jury commissioner to corroborate the testimony of the judge and deputy clerk, for the reason the said oath read that said Brewster would discharge the duties of "jury commissioner in and for ward 5 of Lincoln parish, La."

[1] It was not essential to the validity of the appointment of the jury commissioner that the order appointing him should be spread upon the minutes. That provision of the jury law (Acts 1898, No. 135, § 3) is only directory, and the failure to do so in no wise affected the commissioner's right to qualify and act thereunder. State v. Taylor, 44 La. Ann. 783, 11 South. 132; State v. McClendon, 118 La. 792, 43 South. 417; State v. Jordan, 136 La. 476, 67 South. 337.

[2] The next question is: Not having been recorded, and the original order being lost, could its existence and contents be proven

by parole? Citation of authority is scarcely necessary to sustain the affirmative of that question. All that is necessary is to prove: First, that the document existed; and, second, that due, but futile, efforts have been made to produce it in court. See Wharton's Crim Ev. (9th Ed.) § 199 et seq., p. 162 et seq.; Childress v. Allin, 17 La. 37; Donaldson v. Winter, 1 La. 137; State v. Stewart, 45 La. Ann. 1164, 14 South. 143.

[3] With regard to the sufficiency and admissibility of the oath taken by Brewster, we quote the same as follows:

"State of Louisiana.
"I, George W. Brewster, residing at Choudrant post office, in the parish of Lincoln, do solemnly swear or affirm that I will support the Constitution and laws of the United States and the Constitution and laws of this state, and that I will faithfully and impartially discharge and perform all the duties incumbent upon me as jury commissioner in and for ward 5, Lincoln parish, La., to the best of my ability and understanding. So help me God. [Signed] G. W. Brewster.
"Subscribed and sworn before me this 3d day of January, A. D., 1921.
"W. J. Hobby, Dy. C. D. C."

The form of the oath, omitting the words "in and for ward 5," complies fully with article 161 of the Constitution of 1913 and the Jury Act of 1898. State v. Stewart et al., 117 La. 476, 41 South. 798. Appellant says that by the insertion of these words Brewster attempted to limit his services to one ward of the parish, and thereby vitiated the oath entirely. We think the oath is to be read and considered in connection with the order of appointment and the law prescribing the commissioner's duties. Although the proof of his appointment under the circumstances detailed above was oral, yet there can be no doubt but that he was appointed to act for the entire parish as the law (Act No. 135 of 1898) required, and he could not, nor could any one else, limit or change the nature or extent of those duties by writing into the oath provisions of the character above quoted. Those words must be treated as surplusage.

### Bill No. 5.

[4] The fifth bill was reserved to the overruling of a motion for a continuance; the grounds for the motion being that there were not enough veniremen in attendance upon the court, and that the list of jurors served upon accused "did not even in a substantial degree inform him of the persons with whom he would be confronted in the selection of a jury."

The record shows that there were 23 jurors in attendance, eight of whom were then serving on the jury in the case of State v. Hardy, wherein defendant in that case was charged with the identical crime for which defendant was being prosecuted. Two had been excused in the Hardy Case for the reason that they were opposed to capital punishment, and another was excused by consent. From the remaining veniremen six jurors were obtained in this case, and the other six were selected from the talesmen drawn from the tales jury box. We know of nothing in the law, nor has anything been cited, to support the charge of error and invalidity of the proceedings in such circumstances. On the contrary, we think it was entirely proper for the court to proceed with the trial as it did. The objection raised by counsel would be applicable in any case where less than enough veniremen remained to complete the panel, whatever the cause for excusing the others might be, and we do not believe that the law contemplates that the court should be rendered powerless to function, or that it should have to grant a continuance in every case where twelve of the regular veniremen could not be called to the panel, if such objection be raised. In no case where members of a jury are selected from the tales jury box or bystanders is the accused furnished with a list, as a rule, until just before calling them for examination; yet this is no excuse for delaying or postponing the trial.

### Bill No. 6.

[5] Bill No. 6 was to the sustaining of an objection by counsel for the state to the following question propounded to one of defendant's witnesses, Mrs. Barbara Bryant, the objection being the evidence sought would be immaterial, hearsay, and the opinion of the witness, to wit:

"Q. When you were at your son's house on Saturday after having come there the day before and heard on Saturday around 12 or 1 o'clock of the death of Mr. Whit Albright, what, if anything, did your son, Jim Bryant, do?"

The court ruled that the objection be "sustained at this time," whereupon counsel for accused stated to the court that:

"The purpose of the inquiry is to show that upon Saturday following the arrival of this witness at her son's house in Jonesboro news came of the death of Whit Albright, and witness' son, Jim Bryant, in his automobile, took Mr. Will Bryant, who was not related to him, but who was a brother-in-law or near relative of Mr. Albright, to his residence, where it was said the body was, to attend the obsequies and funeral ceremonies; the relevancy of this testimony being to establish with greater accuracy the time that this defendant is known to have been at Baxter Porter's home, in Winn parish, and its relation to the time when J. Whit Albright's body was found dead."

The court then finally sustained the objection. In his per curiam the judge tells us that:

"It was not shown that witness' son was connected in any way with the killing or with the presence or the whereabouts of the accused. It was simply an attempt on the part of the counsel for the accused to show that said witness' son had attended the funeral ceremony of the deceased. How that fact could have relevancy I am unable to understand. Too, it called for the hearsay statement of her son, because the witness herself had not attended the funeral ceremonies and did not know whether her son had done so except from his statements or those of some one else. It could not have served to refresh the memory of the witness about her presence at the home of Baxter Porter two days before, because she had testified positively that she was there and recited instances which she claimed happened there that day."

We think the reasons given by the trial court for sustaining the objection are sufficient. With the meager knowledge of the facts which is furnished by the record, we are unable to see the relevancy of the evidence, it appearing exceedingly remote, if relevant at all, and the question appears to be amenable to the other objections of hearsay, etc., which the court sustained. We find no error justifying a reversal of the judgment under this bill.

### Bill No. 7.

[6, 7] The state, in anticipation of the defense of an alibi, placed upon the stand while presenting its case in chief one Lee Aswell, marshal of the town of Eros, in the parish adjoining the one in which the offense was alleged to have been committed, and showed by him that on Saturday following the homicide on Thursday the accused spent the day in that village. The judge tells us that the accused later took the stand in his own behalf and denied that he had been to Eros on that day; whereupon the state called Aswell in rebuttal, and propounded to him the following question:

"Q. Mr. Aswell, when, if any time, on Thanksgiving day of last November did you see this defendant, if at all?"

Counsel for accused objected for the reason that the evidence sought was not in rebuttal, and further that witness had been on the stand while the case was with the state in chief, and he could not be allowed to contradict, add to, modify, or bolster up his testimony. The objection was overruled; and the witness answered:

"A. It was on Saturday and 26th after Thanksgiving."

The accused having sought to prove an alibi, any evidence that might tend to contradict his own statements as to where he

was at any time near the date of the homicide was relevant in rebuttal; and, as to the the other objection, the answer shows that the witness did not in any wise change his testimony from what it was in chief. We find no error.

### Bill No. 8.

[8, 9] Bill No. 8 assails the correctness of the judge's charge (which was given in writing) on the question of circumstantial evidence. We are informed by the per curiam that—

"At the conclusion of the delivery of the charge to the jury and just as the jury was preparing to retire to their room, counsel simply stated to the court that he excepted to the charge of the court in regard to circumstantial evidence. No reasons were given why he excepted to the charge, and no request was made to the court to charge the jury differently in regard to circumstantial evidence."

The charge of the court on the subject of circumstantial evidence was as follows:

"There are two kinds of evidence, direct and circumstantial evidence. Direct evidence is that sort of evidence by which a fact is proved directly and without inference from other facts, and is usually given by witnesses who saw, heard, or otherwise observed some particular fact or occurrence. Circumstantial evidence is that sort of evidence by which an inference of an unknown fact is drawn from existence of known facts. It is based on inference or conclusions which are the logical result of reasoning from the known to the unknown fact. Circumstantial evidence is just as good in the law as any other sort of evidence, provided it satisfies the mind fully of the proposition sought to be proved. Circumstantial evidence alone is enough to support a verdict of guilty of the most heinous crime, provided the jury believe beyond a reasonable doubt that the accused is guilty upon the evidence. No greater degree of certainty is required where the evidence is circumstantial than where it is direct. You are bound by your oath to render a verdict upon all the evidence in the case, and the law makes no distinction between direct evidence of a fact and evidence of circumstances from which the existence of a fact may be inferred. But, to sustain a verdict founded upon circumstantial evidence alone, the circumstances themselves must be proved to the satisfaction of the jury, and in such cases the circumstances proved must be such as to lead to no other legitimate conclusion except the guilt of the accused; or, in other words, they must exclude every other reasonable hypothesis but the guilt of the accused. In a case based partly upon direct testimony and partly upon circumstantial evidence, you must weigh both together and fully in reaching your verdict."

We are also informed that the proof consisted partly of direct and partly of circumstantial evidence, including statements voluntarily made to another prisoner in jail and to the sheriff by accused.

The charge, we think, as far as it goes, states the law correctly, and a mere exception to it without pointing out omissions, or requesting charges which counsel thought necessary, was insufficient to set aside the verdict after accused had taken chances of acquittal. The main point made in the brief is that the court should have charged the jury that it should consider circumstantial evidence with caution. Such a charge, if requested, would have been perfectly proper, but it was not requested, and we think the charge otherwise sufficiently instructs the jury with regard to the degree of care with which this character of evidence should be treated without the necessity for using the specific words "with caution." State v. Weston, 107 La. 45, 31 South. 383; Marr's Crim. Juris, p. 799.

### Bill No. 9.

The last bill was taken to the overruling of a motion and supplemental motion for a new trial. The grounds were the several matters covered by the preceding bills of exception herein passed upon, that the verdict was contrary to the law and the evidence, and upon alleged newly discovered evidence.

[10, 11] Therefore nothing new is presented for us to pass upon save the question of the alleged newly discovered evidence. The court tells us that due diligence was not

used, and the alleged evidence was merely cumulative. The motion alleges that the defendant had discovered three additional witnesses who would swear that on November 26th, two days after the date of the homicide, the accused was near Winnfield, in a neighboring parish, in contradiction of the witness Lee Aswell, sworn in rebuttal, who stated that accused was in Eros on that day, merely repeating a statement made in chief for the state. No evidence was tendered in support of the motion for a new trial, nor were there any affidavits by the newly discovered witnesses; and the sole proof thereof was the affidavit of the accused to the motion. In such circumstances, we are not justified in disturbing the ruling of the trial court, in whom is vested a wide discretion in the matter of granting or refusing new trials. State v. Jones, 112 La. 980, 36 South. 825. Marr's Crim. Juris. p. 831, and authorities there cited.

There appearing no reversible error, the conviction and sentence are affirmed.