HIGGINS, Justice.
 

 The defendant was indicted for the offense of shooting with intent to murder Frazier Tarver. He was tried and found guilty as charged by the jury with a recommendation for the mercy of the court. He was sentenced to serve from four to twelve years in the State Penitentiary. The accused appealed and relies upon five bills of exception for the annulment of the conviction and the sentence. In this Court the accused was not represented by counsel nor was any brief filed in his behalf.
 

 On April 15, 1940, when the defendant reported for work at the lumber mill where he was employed, Frazier Tarver, the foreman, told him that he was discharged and to go to the office to receive his pay. The accused did so and then sought the advice of an attorney as to his right for reinstatement, but was advised that he had no legal recourse. The defendant then traded his rifle for a pistol and, after purchasing a box of cartridges, went to the outskirts of the town and engaged in target practice. Later, while drinking coffee in a local restaurant, he stated he was going to “get someone” down at the mill. Upon returning to the company’s premises, he remarked that he was going “to set them a pattern to work by.” As he approached Tarver, he said he was going to kill him and, without warning or provocation, immediately shot him in the face. The bullet lodged in the back of Tarver’s skull, near the base of the
 
 *846
 
 brain, and it was ■ impossible to remove it without seriously endangering his life.
 

 The indictment was returned on June 6, 1940 and, after a plea of not guilty, the case was fixed for trial during the jury term of October 1940 in Winn Parish. The matter was continued in October, because Tarver was still confined to a hospital in Shreveport. The case was refixed for March 4, 1941 and continued to or re-fixed for April 7, 1941. On the latter date the defendant informed the court that his attorney was sick in a hotel at Natchitoches. After the sheriff inquired as to the attorney’s condition and made his report, the case was continued for trial on April 9th.
 

 On April 9th, the defendant and his counsel appeared in court, but his attorney objected to proceeding with the trial, claiming that he had not sufficiently recovered from his illness. Finally, after some discussion, the defendant’s attorney stated that he was “ready”, subject to his protest and objection with reference to his condition. Thereupon, the trial proceeded and when the hour of adjournment of court was reached, the defendant’s counsel expressed his desire to complete the case, and after the introduction of the evidence was completed (about 9 o’clock that night), the defendant’s attorney objected to the suggestion of the court that the arguments be made the next day and insisted upon arguing the -case that night. The defendant’s attorney did not ask for any delay, recess, or continuance after the case had been ordered tried, even though the trial judge had stated to him that, if it developed during the trial that he could not proceed with the defense, a recess would be granted. The case was concluded the same day. The defendant was convicted and his motion for a new trial was tried and overruled on April 17th, and he thereupon was sentenced.
 

 We shall discuss bills of exception Nos. 1 and 2 together because of their close relation on the facts.
 

 The accused took the stand in his own behalf and stated that he had returned to the mill to secure a settlement of wages due him, that'he shot Tarver only after he thought Tarver was reaching for a gun, and that he “was sorry that he had to sFoot him.”
 

 On cross-examination, the defendant was asked if he had not made the statement in the city jail on the day of the shooting, in the presence of Night Marshal Baker, that there were two or three others at the lumber mill that he wanted to get. It appears that this statement was made also in the presence of the defendant’s wife and her brother.
 

 The defendant objected to this question on the ground that it was not pertinent to the charge on which he was being tried, and could not serve as a basis for impeachment, because it was irrelevant and immaterial and was merely an effort on the part of the district attorney to prejudice the jury against him. The objection was overruled, and the defendant answered the question in the negative. The district attorney, after conferring with Night Marshal Baker, asked the defendant whether he had made the statement. The defendant again denied
 
 *848
 
 making any such statement. After the defendant closed his case, the State, in rebuttal, called Marshal Baker and asked him if the accused had made the statement. The defendant objected to this question on the ground that it was based on a supposition, that it was made after the alleged shooting, that it was privileged because it was made in the presence of his wife, and that it could not form the basis for impeachment because it was not pertinent to the issue of guilt or innocence of the accused.
 

 In the motion for a new trial, these matters were, reiterated.
 

 In Marr’s Criminal Jurisprudence, Volume 1, page 151, it is stated that the offense of shooting with intent to murder is composed of two ingredients; one, the shooting, and, second, the intent to commit murder. It is also stated that the gravamen of the crime lies in the intention with which the act of shooting is done. State v. Price, 45 La.Ann. 1430, 14 So. 250; State v. Brinkley et al., 180 La. 679, 157 So. 388.
 

 The statement made by the accused was relevant and material to show intention and animus on his part, especially in rebuttal of his plea that he shot in self-defense, that he only shot to stop Tarver, and that he was sorry he had to shoot him. The statement that the defendant wanted to get two or three “more” of them at the mill was competent and material to show his intent “to get Tarver.” Code of Criminal Procedure, Articles 444, 445, and 446.
 

 This is not a case where the prosecution reserved its main attack until after the defendant had closed his case. It is not an instance where important testimony was withheld by the prosecution until after the defendant’s case was closed so as to place him at a disadvantage. The State had already established, by eyewitnesses, its case in chief and had shown that Tarver was unarmed and had given no provocation at the time he was shot by the accused. The statement was introduced in evidence to rebut the defendant’s testimony tending to show that he shot in self-defense and that he had no intention of returning to the mill to attack Tarver. State v. Pousson, 134 La. 279, 63 So. 902. Moreover, the trial judge has discretion in matters of this kind and it does not appear that he abused his discretion in this case (Article 379, Code of Criminal Procedure), because the defendant had been placed on his guard concerning the statement when he was on the stand and he closed the case without making any attempt to corroborate his denial of having made the statement by placing either his brother-in-law or his wife on the stand.
 

 The statement of the accused, admitted in evidence over his objection, can not be considered as a privileged communication merely because it was made to or in the presence of the defendant’s wife. Article 461 of the Code of Criminal Procedure provides that “private conversations between husband and wife shall be privileged” and that “neither husband nor wife shall be compelled to be a witness * * * against the other.” The statement was not made to the defendant’s wife in a private conversation, but
 
 *850
 
 it appears that the defendant was still very angry and made it when talking through the bars of the jail to his wife and brother-in-law in the Marshal’s office in the presence of the Night Marshal. He did not seek any private interview with his wife nor was a whispered conversation attempted.
 

 These bills are without merit.
 

 Bill of exception No. 3 was reserved by the defendant, after objecting to the court’s charge on the law of “self-defense.” No statement was made or filed, showing suggestions of error in the charge. If the charge were in any way erroneous and objectionable, the error should have been pointed out or called to the judge’s attention. The defendant’s failure to have done so is fatal to his right to now ask that the verdict be set aside, especially when he did not in any way, even in this Court, indicate what he considered objectionable or irregular. Code of Criminal Procedure, Articles 391, 392, 393; State v. Weston, 107 La. 45, 31 So. 383; State v. Scarborough, 152 La. 669, 94 So. 204; State v. Brown, 152 La. 801, 94 So. 401; State v. Holbrook, 153 La. 1025, 97 So. 27; State v. Scott, 163 La. 25, 111 So. 483; State v. Linam, 175 La. 865, 144 So. 600, and State v. Warlick, 179 La. 997, 155 So. 460.
 

 We might add that, in our opinion, the trial judge’s charge to the jury appears regular and correct.
 

 Bill of exception No. 4 was reserved to the refusal of the district judge to give the following special charge: “A defendant may plead self-defense, and at the same time, that he shot only to stop one assaulting him.” This requested charge, without any explanation, qualification or limitation, is not a correct statement of the law. If the judge had given it, it would have tended to confuse and mislead the jury. The defendant’s contention appears to be based upon the theory that a person, in all instances, is justified in defending himself if he shoots only to stop another from assaulting him. An aggressor or one who seeks out another and provokes an assault or brings on a difficulty, as a general rule, can not plead self-defense. In such cases, he must retreat or make known his intention of abandoning the difficulty before the right of self-defense is restored to him. But, if one is free from fault and has the right to stand his ground and repel force with , force, he has no right to use force other than that which a reasonable and prudent man would consider necessary to repel the assault. If an adversary is making an assault so as not to endanger the life of another, or so as not to threaten another with great or se'rious bodily harm, then the person assaulted would not be justified in shooting his adversary, even for the purpose of stopping him, unless it appeared to a reasonable and prudent person, under such circumstances, that the use of such force was deemed necessary. These are some of the explanations and qualifications which would have been necessary to make the requested charge proper. Article 390, Code of Criminal Procedure. Furthermore, the trial judge may refuse to give requested charges if they are covered in the general charge and, particularly,
 
 *852
 
 where they tend to confuse the jury. State v. Lejeune, 116 La. 193, 40 So. 632; State v. Poree, 136 La. 939, 68 So. 83; State v. Erwin, 133 La. 550, 63 So. 167; and State v. Eliott, 171 La. 306, 131 So. 28, 77 A.L.R. 314. The general charge of the trial judge on the law of self-defense fully covers the matter referred to in this special charge. In the general charge, the judge stated that if a person were assaulted in such a way as to lead a reasonable and prudent person to believe that he was threatened with great bodily harm or that his life was- endangered, the assaulted person could not only shoot to stop the person assaulting him, but could, go further and kill him in defense of his own person.
 

 Bill of exception No. 5, reserved to the trial judge’s action in overruling the motion for a new trial, covers previous bills of exception already discussed, and raises the additional point that the defendant was not present in open court during all the proceedings, because he had left the court room and was in the adjoining Petit Jury Room at the time his counsel stated they were “ready for trial.” There is no doubt that the accused was seated at the counsel table with his attorney from the time the trial began until it ended,' even though he might have been out of the court room — having been admitted to bail —when the judge called the case for trial.
 

 The defendant was in open court when he was arraigned and entered a plea of not guilty and was likewise present in open court from the beginning to the end of the trial. Article 332 of the Code of Criminal Procedure provides that the trial begins the moment the first juror is called for qualification and in cases tried by the judge alone, the moment the first witness has been sworn. It is clear that the defendant was actually present in open court, with his counsel, before and at the moment the first juror was called for qualification.
 

 The defendant made another claim of error in the motion for a new trial, i. e., that the trial judge permitted the doctor to testify as to Tarver’s condition several hours after the shooting. The defendant did not- reserve any bill of exception to the court’s ruling permitting such testimony* and, therefore, there is nothing before this Court for review.
 

 For the reasons assigned, the verdict of the jury and the sentence of the court are affirmed. •