431 So.2d 833 (1983)
STATE of Louisiana, Plaintiff-Appellee,
v.
Anthony J. SANDERS, Defendant-Appellant.
No. 15295-KA.
Court of Appeal of Louisiana, Second Circuit.
May 3, 1983.
Rehearing Denied June 8, 1983.
*834 Terry Lindsey and Catherine Estopinal, Asst. Dist. Attys., Shreveport, for plaintiff-appellee.
Donald R. Minor, Indigent Defender, Shreveport, for defendant-appellant.
Before PRICE, FRED W. JONES, Jr. and NORRIS, JJ.
NORRIS, Judge.
Defendant, Anthony J. Sanders, appeals a conviction of second degree murder by a jury, assigning the following three errors:[1]
(1) The trial court erred in refusing the defendant's jury charge.
(2) The trial court erred in denying the defendant's motion for a new trial after the State's failure to inform the defendant fully of the substance of a post-arrest statement by the defendant.
(3) The trial court erred in denying the defendant's post verdict motion for a judgment of acquittal.

FACTS
In the late evening of December 24, 1981, defendant and his homosexual lover, Benjamin Fulcher, garbed as a female, were walking down a street in Shreveport when, for reasons not clearly established, an altercation ensued. Four witnesses riding in a car came upon the fight after its inception and observed the defendant hitting Fulcher with his fists, knocking him to the ground, and stomping him about the head. Thereafter, the witnesses saw the defendant drag Fulcher into the weeds, remove his jeans and undergarment and perform what appeared to be an act of anal intercourse on his unconscious body. Believing Fulcher to be a woman because of his feminine attire, the witnesses then notified the police, who arrived on the scene to find the unconscious Fulcher in a state of semi-undress bleeding from the mouth, temple, nose and ear. It was only when Fulcher was examined on the scene that it was discovered that he was a male rather than a female. Fulcher was taken to the LSU Medical Center where, after examination, it was determined that he was suffering from brain clots caused by the blows which he had received to the head. After undergoing brain surgery, Fulcher remained comatose until April 20, 1982, when he died from complications resulting from the blows inflicted by the defendant on December 24, 1981. Subsequent to the death of Fulcher, the defendant was indicted for second degree murder, tried and found guilty as charged.

*835 ASSIGNMENT OF ERROR NO. 1
Prior to argument, the defendant requested that the trial judge include the following special charge in his jury instructions:
A person who is assaulted by another is under no obligation to retreat from such an assault and has the right to act in self defense.
Defendant contends that the requested charge was necessary in order to qualify the general charge given by the trial judge. The defendant testified at trial contending that he had acted in self defense in response to Fulcher's initiation of the fight; thus, on appeal, he now contends that the above charge was necessary to amplify the judge's instruction that "... the possibility of avoiding the incident by retreat" was one of several factors to consider in determining whether the defendant had a reasonable belief that his actions were necessary. Defendant contends that it was necessary for the jury to be informed that he had no duty to retreat.
Special jury charges are provided by La. C.Cr.P. Art. 807.[2] However, it is clear that the requested charge must be wholly correct without requiring qualification, limitation and explanation and need not be given if it is included in substance in the general charge.
Defendant argues that under State v. Boatright, 406 So.2d 163 (La.1981), there is no "retreat rule" in Louisiana; thus, defendant had no obligation to retreat from the altercation. However, a closer reading of the statement in Boatright upon which defendant relies reveals that "... defendant's reasonable perception of the killing as the only reasonable means of extricating himself from the danger is critical." This rule of law is further amplified in State v. Brown, 414 So.2d 726 (La.1982) wherein the court stated:
... Although there is not an unqualified duty to retreat the possibility of escape is a recognized factor in determining whether or not a defendant had the reasonable belief that deadly force was necessary to avoid the danger ...
See also State v. Stroud, 198 La. 841, 5 So.2d 125 (La.1941)[3] and 5 La.L.Rev. 236.[4]
Thus, in order to have properly stated the law to the jury, the trial court in the instant case would have had to amplify and explain the requested charge to include the critical requirement that the defendant must have reasonably perceived killing or the infliction of great bodily harm as the only reasonable means of extricating himself from the danger. Thus, the charge, as requested by the defendant, does not fulfill the requirements of La.C.Cr.P. Art. 807; therefore, the trial judge was under no duty to accept it.
Furthermore, our review of the record reveals that the jury instructions given, viewed as a whole, adequately stated *836 the law regarding self defense and retreat. The charge on self defense and retreat given in the instant case is virtually identical to that given in State v. Tolbert, 390 So.2d 510 (La.1980), which was quoted with approval by the Supreme Court. A jury charge must be considered as a whole, and a conviction will not be reversed even on the ground of erroneous instruction unless the disputed portion when, viewed in light of the entire charge, is erroneous. See State v. West, 419 So.2d 868 (La.1982). We find no such error in the instant jury charge.
Finding that the trial judge was under no duty to give the requested charge, and that the jury charge as a whole adequately covered the subjects of self-defense and retreat, this assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 2
One week after the rendition of the guilty verdict, the defendant filed a motion for new trial complaining of the introduction of testimony at trial by the State without full compliance with the defendant's motion for discovery and La.C.Cr.P. Art. 716.
Prior to trial in response to the defendant's motion for discovery, the state notified defense counsel of its intent to offer into evidence two oral statements made by the defendant in the presence of police officers the substance of which was given as follows:
The substance of both statements referred to previously made by the defendant are that he was struck with a stick by the complainant [Fulcher] and attacked him [Fulcher] at that time. [Brackets added.]
At trial, one of the officers to whom the defendant made the statements testified as follows:
He [defendant] explained that it was in retaliation for Fulcher hitting him [defendant] with a stick, that they [Fulcher and defendant] had been arguingexcuse meand that the argument was prompted by jealousy. [Brackets added.]
At the time that this testimony was given at trial, the defendant made no objection.
While defendant argues that the substantive variation between the testimony at trial and the notification from the State in pre-trial discovery warrants the granting of a new trial, we conclude that under the applicable law, the defendant's failure to contemporaneously object to the introduction of the testimony at trial bars our consideration of any error that might have been made.
In State v. Naas, 409 So.2d 535 (La.1981), the applicable rule is stated:
By not objecting, the defense eliminated the possibility of imposition of the sanctions enumerated in C.Cr.P. 729.5 as a means to rectify any inequity created by the state's noncompliance. We affirm our holding that defendant cannot challenge the state's noncompliance because he failed to object. See State v. Bonanno, 373 So.2d 1284 (La.1979).
This rule is applied in State v. Quimby, 419 So.2d 951 (La.1982) where it was held that the failure of a defendant to object to the State's response to a discovery motion, to state the basis for the complaint clearly and to request the trial court to grant any of the remedies afforded by statute for the failure to comply with discovery effectively waives the right to complain on appeal in connection therewith.
Clearly, this assignment is without merit because defendant's failure to object operates as a waiver of his right to complain of this error on appeal.

ASSIGNMENT OF ERROR NO. 3
Defendant filed a motion for post-verdict judgment of acquittal on the basis that the evidence did not support a verdict of guilty of any crime greater than manslaughter. This motion was denied by the trial court.
In our consideration of this assignment of error, we note that such a motion is inappropriate in a case which is tried by a jury but is reserved for those cases utilizing a bench trial. La.C.Cr.P. Art. 778 provides in pertinent part:

In a trial by the judge alone the court shall enter a judgment of acquittal on *837 one or more of the offenses charged, on its own motion or on that of defendant, after the close of the state's evidence or of all the evidence, if the evidence is insufficient to sustain a conviction. [Emphasis added.]
However, because such a motion made in connection with a jury trial has been treated as a motion for new trial by the Supreme Court [See State v. Vaccaro, 411 So.2d 415 (La.1982); State v. Brown, 395 So.2d 1301 (La.1981).], we will consider defendant's motion to be a motion for new trial based on insufficiency of evidence and review it accordingly.
A review of the sufficiency of the evidence to support a criminal conviction requires a determination of whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime to have been proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307,99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). This review is required by the Due Process Clause of the Fourteenth Amendment to determine whether the evidence upon which a criminal conviction is based is minimally sufficient. State v. Graham, 422 So.2d 123 (La.1982).
Defendant argues that a review of the evidence presented to the jury that convicted him does not support a finding of guilty by a rational trier of fact of the offense of second degree murder. In pertinent part, La.R.S. 14:30.1 defines second degree murder as:
... the killing of a human being:
(1) When the offender has a specific intent to kill or to inflict great bodily harm. [Emphasis added.]
Specific intent is defined by La.R.S. 14:10:
(1) Specific criminal intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. [Emphasis added.]
Defendant's argument that the evidence only supports a verdict of guilty of the crime of manslaughter centers around La. R.S. 14:31(2)(a) which provides:
Manslaughter is:
* * * * * *
(2) A homicide committed, without any intent to cause death or great bodily harm.

(a) When the offender is engaged in the perpetration or attempted perpetration... of any intentional misdemeanor directly affecting the person; ... [Emphasis added.]
Thus, defendant's argument is based on the contention that the killing in the instant case occurred as a result of a simple battery committed by defendant upon Fulcher without any intent to cause death or great bodily harm. In essence, defendant argues that there is a failure of proof of the requisite element of specific intent in this case to support the conviction because the actions of the defendant do not reflect an active desire to kill Fulcher or to subject him to great bodily harm or to have him die from resulting complications. Defendant contends that the record is devoid of proof of circumstances which indicate that defendant actively desired death or great bodily harm to follow his act as required by La. R.S. 14:10 to prove specific intent. After carefully reviewing the record, we disagree.
Specific intent is a state of mind which need not be proven as a fact but may be inferred from the circumstances of the transaction and the actions of the defendant. State v. Boyer, 406 So.2d 143 (La. 1981). Thus, it is necessary that a determination be made as to whether the circumstances presented supports the jury's finding that defendant had the requisite specific intent to kill or inflict great bodily harm on Fulcher.
La.R.S. 15:438 provides:
The rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.
*838 At trial, the State produced four witnesses who saw the defendant knock Fulcher to the ground without provocation and stomp him about the head several times. The witnesses did not equivocate in their statements that at no time did they see Fulcher commit any act of aggression or even try to defend himself from the defendant's blows. Such violent actions, in and of themselves, prove that the defendant intended to, at the least, inflict great bodily harm upon Fulcher. When found by the police, Fulcher was in an unconscious state, bleeding from the ear and mouth and gasping for breath. When examined by the medical personnel at the LSU Medical Center, Fulcher was in a comatose state suffering from blood clots on the brain from which he never recovered despite attempts at corrective surgery. These circumstances, also indicate that the defendant actively desired that great bodily harm result from his actions.
The testimony of the defendant that Fulcher initiated the fight and that the defendant responded in self defense does not provide a reasonable hypothesis of innocence or a lack of specific intent because the direct evidence clearly conflicts with defendant's version of the events surrounding the fight and shows that the force which the defendant used against Fulcher was excessive and unnecessary.
The treating physician at the time of death and the Caddo Parish Coroner testified that Fulcher died from generalized infection due to malnutrition resulting from the comatose state caused by the head injuries inflicted by the defendant. While Dr. McCormick, the Bossier Parish Coroner, testified that an incomplete autopsy had been performed from which he was unable to determine the underlying cause of Fulcher's death, the testimony of the treating physician coupled with that of the Caddo Parish Coroner is sufficient to determine that the underlying cause of death was the severe beating administered by the defendant which resulted in subdural and intercerebral hematomas which caused the comatose state which caused death.
Therefore, we conclude that in this case assuming every fact that the evidence tends to prove, the evidence excludes every reasonable hypothesis of a lack of specific intent to kill or to inflict great bodily harm or innocence, and this conviction is clearly based upon evidence from which, when viewed in the light most favorable to the prosecution, a rational juror could find that the essential elements of the crime of second degree murder had been proved beyond a reasonable doubt. Thus, the evidence is both constitutionally and statutorily sufficient to support defendant's conviction. See State v. Graham, supra.
Accordingly, this assignment of error is without merit.
For the foregoing reasons, the conviction and the sentence of defendant are affirmed.
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] The defendant originally filed six assignments of error in connection with this appeal. However, he has only briefed and argued three of those assignments of error. Therefore, those assignments of error neither briefed nor argued are considered to be abandoned. State v. Dewey, 408 So.2d 1255 (La.1982).
[2] La.C.Cr.P. Art. 807 provides:

The state and the defendant shall have the right before argument to submit to the court special written charges for the jury. Such charges may be received by the court in its discretion after argument has begun. The party submitting the charges shall furnish a copy of the charges to the other party when the charges are submitted to the court.
A requested special charge shall be given by the court if it does not require qualification, limitation, or explanation, and if it is wholly correct and pertinent. It need not be given if it is included in the general charge or in another special charge to be given.
[3] In State v. Stroud, the court held that a requested special charge to the effect that "[a] defendant may plead self-defense, and at the same time, that he shot only to stop one assaulting him," was an incorrect statement of the law and should not be given since:

... If an adversary is making an assault so as not to endanger the life of another, or so as not to threaten another with great or serious bodily harm, then the person assaulted would not be justified in shooting his adversary, even for the purpose of stopping him, unless it appeared to a reasonable and prudent person, under such circumstances, that the use of such force was deemed necessary. These are some of the explanations and qualifications that would have been necessary to make the requested charge proper ...
[4] "Thus, where the assault does not endanger life or threaten serious bodily harm one is not justified in shooting and killing his adversary." 5 La.L.Rev. at p. 237.