155 So. 460

**STATE v. WARLICK.**

No. 32721.

May 21, 1934.

. George Wesley Smith and K. Ann Dodge, both of Monroe, for appellant.

G. L. Porterie, Atty. Gen., James O'Connor, Asst. Atty. Gen., Frank W. Hawthorne, Dist. Atty., of Bastrop, and George W. Lester, Asst. Dist. Atty., of Monroe (James O'Niell, Sp. Asst. to Atty. Gen., of counsel), for the State.

ODOM, Justice.

The defendant shot and killed his stepson and was indicted for murder. He was convicted of murder without capital punishment and sentenced to life imprisonment. On appeal he asks that the verdict and sentence be set aside on five grounds, which are set forth in bills of exception.

■ *Bill No. 1.* The wife of the accused was summoned as a witness by the state. After the jury was impaneled, counsel for defendant requested the court to sequester all witnesses, both for the state and for the defense. The wife of the accused, being one of the witnesses, was called to the bar along with the others. Counsel for defendant informed the court that Mrs. Warlick was not willing to testify in the case. Whereupon the court, in the presence of the jury, asked her if she would refuse to testify and she stated that she would. On being asked why, she stated that her refusal was based upon the ground that she was the wife of the accused. Whereupon the court excused her and she was ordered to stand aside.

It is conceded that Mrs. Warlick was within her rights in refusing to testify. Counsel's contention is that Mrs. Warlick should not have been called before the court in the presence of the jury and asked to give her reasons for refusing to testify. Counsel argue that the jury very probably inferred that the reason why she would not testify was that she did not want to give testimony against her husband.

In State v. Werner, 128 La. 2, 54 So. 402, 404, the wife of the defendant was placed on the stand by the district attorney. Her head was bandaged and her arm in a sling at the time she was called. This was done after the court had notified the state's attorney in private that he would not allow the wife to testify. Defendants' complaint was that the defendant might have been prejudiced by this proceeding, but this court said: "Here, again, we do not think any prejudice sufficiently serious can have been done the accused to justify setting aside the verdict. The wife did not testify. Objection was made at once, and the judge sustained the objection, and, at the same time, warned the jury in these words: 'Gentlemen, I charge you that you are not to be influenced by the appearance of the wife, as it has absolutely nothing to do with the case.' "

■ The defendant was not prejudiced by this proceeding in the present case. This bill of exception involves another point. While the district attorney was cross-examining the defendant, he had before him and was constantly referring to notes previously made by him. Counsel for defendant objected to the district attorney's referring to the notes on the ground that the jury might draw the inference that the notes were made by the district attorney from statements made to him by the wife of the accused. The ob-

jection was sustained. The judge in his per curiam to this bill stated that whereas he was of the opinion that while the defendant could not reasonably object to the district attorney's referring to his notes, yet in order to avoid what counsel for defendant seemed to think might result in prejudice to the accused, he ordered the district attorney to desist and instructed the jury to disregard the matter altogether.

There is nothing to indicate that the jury could read the district attorney's notes from where they sat, and no reason to infer that they were led to believe that the notes made by the district attorney were with reference to the conversations which he had had with the wife of the accused. We are of the opinion that there is no merit in this bill.

*Bill No. 2.* One of the witnesses called by the state was Juanita Warlick, the daughter of the accused. She was asked whether or not she had ever seen her father beat her mother. The question was objected to by counsel for defendant, the objection sustained, and the question was not answered. The ground on which counsel complain is that this was an attempt on the part of the state to impeach the character of the defendant, he not having put his own character in evidence.

The character of the defendant was not put at issue by the unanswered question propounded to the witness. That being true, we cannot say that he was prejudiced by the mere asking of the question. The question was an improper one under the circumstances. But as it was not answered, the defendant suffered no injury. State v. Scara, 153

La. 907, 96 So. 805; State v. Curtis, 138 La. 911, 70 So. 878; State v. Sikes, 149 La. 75, 88 So. 693.

*Bill No. 3.* One of the witnesses called by the state was Dorothy Warlick, a girl between seven and eight years of age. Counsel for defendant objected to the swearing of this witness on the ground that she was not capable of understanding the nature of an oath. The witness was interrogated by counsel and also by the trial judge. She was permitted to testify and this bill was reserved. The trial judge in his per curiam says:

"The court was careful to observe this witness and while she was a little nervous she was certainly qualified to testify. * * * As a matter of fact her testimony was given in such a way and in such language as to show she was developed mentally far beyond her age."

The testimony of this witness is in the record, and our reading of it has convinced us that the judge did not err in permitting her to testify.

Article 469 of the Code of Criminal Procedure provides that: "Understanding, and not age, must determine whether any person tendered as a witness shall be sworn; but no child less than twelve years of age shall, over the objection either of the district attorney or of the defendant, be sworn as a witness, until the court is satisfied, after examination, that such child has sufficient understanding to be a witness."

In cases where a child under twelve years of age is called as a witness and where

the trial judge examines the witness and from such examination is convinced that the witness is competent, his ruling to that effect will not be disturbed unless the testimony brought up shows that he manifestly erred in his ruling. Great weight must be attached to the ruling of the trial judge in such cases for the reason that he has the advantage of observing the witness and the manner in which her testimony is given, which advantage is not enjoyed by the appellate court. State v. Williams, 111 La. 179, 35 So. 505; State v. Ross, 18 La. Ann. 340; State v. Denis, 19 La. Ann. 119.

Bill No. 4. This bill was reserved to an incident which happened in the courtroom during the progress of the trial. Defendant was being prosecuted for killing his stepson. While on cross-examination by the district attorney he was asked if he did not, a short time before the shooting of deceased, load his gun and go to the mattress factory where deceased worked and say that he was going there to kill deceased. He answered that he did not, whereupon a youth sitting in the audience exclaimed: "Yes, you did; I saw you." The trial judge immediately stopped the examination of the witness and ordered the youth who had made the outcry to come before the bar. It then developed that the boy was a brother of the deceased and was a juvenile. Whereupon the judge ordered the jury to retire and in the absence of the jury ordered the sheriff to deliver the youth over to the juvenile officer. The jury then returned into court and the judge charged them to disregard the incident, and the trial continued. It is conceded by counsel for defendant that

neither the district attorney nor any one else connected with the prosecution was responsible for this incident.

We find no merit in this bill. In State v. Renaud, 50 La. Ann. 662, 23 So. 894, the father of the deceased was sitting in the audience during the course of the district attorney's argument. The district attorney exclaimed: "What will you do with the accused?" The father said: "Put a rope around his neck." The judge at once took steps to prevent a repetition of such remarks in court. The defendant was found guilty of murder as charged and sentenced to be hanged. This court refused to set aside the verdict, holding that the incident could not be viewed as having unduly influenced the verdict.

In State v. Wimby, 119 La. 139, 43 So. 984, 12 L. R. A. (N. S.) 98, 121 Am. St. Rep. 507, 12 Ann. Cas. 643, the court held that such incidents, not attributable to the prosecution, would not vitiate the verdict. In that case the court cited and reviewed the jurisprudence of this state and cited 12 Cyc. 730, the text reading in part as follows:

"And generally, remarks of by-standers unfavorable to the accused, to or in the presence of members of the jury, and overheard by them, although reprehensible, are not ground for a new trial, unless it shall actually appear that a verdict of conviction was produced thereby."

Bill No. 5. The trial judge delivered a written charge to the jury. Counsel for defendant excepted to the charge, but according to the per curiam of the trial judge they

made no specific objection and failed to state what particular portion of the charge was objectionable.

The judge in his per curiam to this bill says:

"Furthermore, the defense simply reserved a bill. Did not state any objections one way or the other. Did not state any reason at the time as to why the bill was reserved."

Article 391 of the Code of Criminal Procedure provides that every objection to the charge given "shall be accompanied by such a statement of facts as shall show the error in the charge given," and the jurisprudence is uniform to the effect that a general objection to the charge given by the court presents nothing for review; a general objection being too vague and indefinite to be considered. "A bill to the whole charge, without pointing out the errors at the time, as is well established, is worthless." State v. Stickney, 167 La. 1050, 120 So. 853, 855; State v. Scott, 163 La. 25, 111 So. 483; State v. Dreher, 166 La. 924, 118 So. 85 (see ruling on Bill No. 100, p. 984); State v. Capaci, 179 La. 462, 154 So. 419.

*Bill No. 6* was reserved to the refusal of the court to grant a new trial. This bill sets out that the verdict and sentence were contrary to the law and the evidence. Such bills present nothing for review. The bill further sets up the errors complained of in the various bills of exception from 1 to 5, inclusive. As we have disposed of these bills already, we shall not refer to them again.

The conviction and sentence are affirmed.