412 So.2d 1013 (1982)
STATE of Louisiana
v.
Clyde Kent ARNAUD.
No. 81-KA-1772.
Supreme Court of Louisiana.
April 5, 1982.
*1015 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Morgan J. Goudeau, III, Dist. Atty., Robert Brinkman, Asst. Dist. Atty., for plaintiff-appellee.
Donald W. Hebert, Pavy, Hebert & Carriere, Opelousas, for defendant-appellant.
BURRELL J. CARTER, Justice Ad Hoc.[*]
Clyde Kent Arnaud was charged with the crime of sexual battery, a violation of La. R.S. 14:43.1, by Bill of Information, on September 18, 1980. He entered a plea of not guilty at arraignment on October 9, 1980. At a jury trial, defendant was found guilty as charged. After a pre-sentence investigation, he was sentenced to serve six (6) years at hard labor. On appeal, defendant filed eight assignments of error. Three of them (1, 6 and 8) were apparently abandoned in brief, so we will consider only the remaining five.

FACTS
At about 11:30 p. m. on July 31, 1980, Debbie Briscoe appeared with her four year old son at the Sheriff's sub-station in Eunice and reported that she had been raped at knifepoint in her home by the defendant, Clyde Kent Arnaud. Mrs. Briscoe was taken to the emergency room at Moosa Hospital in Eunice and examined by a doctor. Investigators arrested the defendant shortly thereafter.
Mrs. Briscoe testified at trial that she and the defendant had lived together for a short time several months before the rape. At the time of the rape, defendant was living with his sister several blocks away. Mrs. Briscoe said that Arnaud had telephoned her around 10:30 p. m. that night and wanted to come over and talk to her. She stated that she told him to leave her alone and stay away from her. Arnaud arrived at her house, on a bicycle, about ten minutes later. When Mrs. Briscoe refused to let him inside and threatened to call the police, Arnaud ran to the side of her house and the telephone went dead. Mrs. Briscoe testified that he also unscrewed the bulb in the porch light. When she still refused to let him in, he held a knife to the tires of her car and threatened to slash them if she did not come outside. Briscoe testified that at that point, she stepped out on the porch and the defendant immediately grabbed her, stuck a knife in her side, and forced her back inside the house. He then forced her into her bedroom where he raped her, all the while threatening to kill her with the pocket knife if she cried or got too loud. When her son came into the bedroom and told the defendant to get out before he killed him, the defendant dressed and left on his bicycle.

ASSIGNMENT OF ERROR NO. 2
On November 7, 1980, defendant filed a motion for discovery and inspection pursuant to La.Code Crim.P. arts. 718 and 719, the pertinent parts of which follow:
3. Inform the defendant of the existence of and permit or authorize him or her to inspect, copy, examine, test scientifically, photograph, or otherwise reproduce, books, papers, documents, photographs, tangible objects, buildings, places or copies or portions thereof, which are within the possession, custody or control of the State, and which: (a) are favorable to the defendant and which are material and relevant to the issue of guilt or punishment, or (b) are intended for use by the State as evidence at the trial, or (c) were obtained from or belonged to the defendant.
4. Inform the defendant of the existence of and permit or authorize him (or her) to inspect and copy, photograph, or otherwise reproduce any and all results or reports, or copies thereof, of physical or mental examination, or scientific tests or experiments, made in connection with or material to this case, that are in the possession, custody, control or knowledge of the district attorney whether intended *1016 for use at trial or not. Any of the above which is exculpatory shall be particularly set out.
At approximately 4:30 p. m. on the day before the testimony began, defendant's attorney was furnished a report of a physical examination made by Dr. DeRouen within a couple of hours of the crime. The next day, defendant moved to suppress the medical report and the testimony associated with it because, in spite of the fact that defendant had filed a motion for discovery, he had not been made aware of the existence of the report until the evening before. The State responded that it did not intend to introduce the report as evidence at trial, but instead intended to call Dr. DeRouen to testify. The trial court allowed the testimony, saying that if after the trial, defendant could get some medical reports that would contradict what the State had, he would give the defendant a new trial. Defendant urges as error that the trial court allowed the State to circumvent the intent of the articles on discovery by substituting the doctor's testimony for the report itself.
The doctor testified that he performed a pelvic examination on the victim at about 12:40 a. m. on August 1, 1980. He found no evidence of forcible entry in the vaginal region. He took a smear from the vaginal tract and found sperm. Dr. DeRouen said that the sperm were nonmotile (not moving). It was his opinion that the presence of nonmotile sperm suggested that intercourse had occurred several hours earlier or that the male was sterile. He testified that even sterile men can have some motile sperm. It was his observation that sperm begin to become nonmotile immediately after ejaculation. After four hours the process is rather precipitous, but there may be some sperm still motile after twenty-four hours. Mrs. Briscoe had told the doctor on the night of the examination, that other than the rape, she had not had intercourse for three weeks prior to her examination.
The doctor's examination was conducted at the request of the Sheriff's department. The record reveals that the District Attorney made the report available to the defendant as soon as he received it. It is difficult to imagine that the existence of the report remained unknown to the District Attorney for so long. If its existence was known to the District Attorney, he had an obligation to inform the defendant if he intended to use the report at trial or if the report was exculpatory. However, the good or bad faith of the District Attorney is not relevant to the resolution of the present issue. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).
La.Code Crim.P. art. 729.5 provides the sanctions available for violation of the discovery articles. It states in pertinent part:
A. If at any time during the course of the proceedings it is brought to the attention of the Court that a party has failed to comply with this Chapter or with an order issued pursuant to this Chapter, the court may order such party to permit the discovery or inspection, grant a continuance, order a mistrial on motion of defendant, prohibit the party from introducing into evidence the subject matter not disclosed, or enter such other order, other than dismissal, as may be appropriate.
Assuming, for the benefit of the defendant, that there had been a violation of La.Code Crim.P. arts. 718 and 719, we must recognize that La.Code Crim.P. art. 729.5(A) permits the trial judge to choose from a wide range of alternative sanctions. State v. Lee, 364 So.2d 1024 (La.1978). There were other remedies available that counsel for defendant did not pursue. He could have requested a continuance or a recess, but he did not. The trial judge elected to proceed with the trial, and, as stated above, offered to grant a new trial if, after trial, defendant could offer evidence contradicting the doctor's report. Apparently no such evidence was ever offered.
Continuing under the assumption that there had been a violation of the articles on discovery, for us to reverse a conviction based on a violation, the defendant must show that he was prejudiced by the court's adverse ruling on the sanction requested. State v. Norwood, 396 So.2d 1307 (La.1981), State v. James, 396 So.2d 1281 (La.1981).
*1017 We believe that the defendant can show no prejudice here. The record, taken as a whole, shows that he had every opportunity to present any and all exculpatory evidence. He fully cross-examined the doctor and was given the opportunity to obtain evidence before testimony began and to present evidence to the jury during the trial and even to the judge after trial.
The U. S. Supreme Court case of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) established the constitutional standard to be applied when the State withholds evidence favorable to an accused that is requested by the defendant. The Court said, "We now hold that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Defendant argues that Brady controls the decision here. We must point out, though, that the evidence here was not withheld. It was given in a report to the defendant the day before testimony began and it was presented at trial. See State v. Manning, 380 So.2d 46.
Defendant's counsel argues that he did not have enough time to prepare himself to be able to thoroughly examine the doctor at trial.[1] In answer to this argument, we quote from a footnote in United States v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342.
It has been argued that the standard should focus on the impact of the undisclosed evidence on the defendant's ability to prepare for trial, rather than the materiality of the evidence to the issue of guilt or innocence... Such a standard would be unacceptable for determining the materiality of what has been generally recognized as "Brady material" for two reasons. First, that standard would necessarily encompass incriminating evidence as well as exculpatory evidence, since knowledge of the prosecutor's entire case would always be useful in planning the defense. Second, such an approach would primarily involve an analysis of the adequacy of the notice given to the defendant by the State, and it has always been the Court's view that the notice component of due process refers to the charge rather than the evidentiary support for the charge. 96 S.Ct. 2392, 2401 n.20.
In the case of State v. Roussel, 381 So.2d 796 (La.1980), information favorable to the defendant was made known to him for the first time during trial. There the defendant did not object to the evidence presented. Nevertheless, this court discussed whether defendant's constitutional right to a fair trial was violated. We said,"... (I)n the case at bar, defendant's late discovery of the alleged exculpatory information did not deprive defendant of an opportunity to effectively present the alleged Brady material to the trier of fact." We feel that here, too, late discovery did not deprive defendant of the opportunity to effectively present the favorable evidence to the trier of fact.
This case does not open the door for prosecutors to violate the articles on discovery. This court in Roussel, supra, recognized that it would have been preferable if the prosecution had disclosed the information prior to trial and said, "Non-disclosure and tardy disclosure of information which may constitute Brady material invites delay, protracted litigation, and involve the risk that an otherwise valid conviction must be reversed and a new trial ordered."
We emphasize that here there was compliance, though tardy. The defendant had several options available to him besides the extreme one of a motion to suppress. He could have asked for a continuance or a recess, but he chose not to do so. The court then decided to proceed with trial and made it clear to counsel that if he could produce other evidence after trial, the court would grant a new trial. This, too, was an appropriate option. Counsel cannot let opportunities pass by and later object when there has been no prejudice to the defendant and no constitutional violation of the defendant's right to a fair trial.
*1018 In cases of more serious violations, the court may order a mistrial, and of course it can, when appropriate, suppress the evidence. Additionally, when the violation is willful, the court may consider failure to comply as constructive contempt of court. La.Code Crim.P. art. 729.5(B).
We conclude that this assignment of error has no merit under state law or under the U. S. Constitution.

ASSIGNMENT OF ERROR NO. 3
Defendant's third assignment of error is that "the trial judge erred in failing to sustain defendant's motion to suppress as it related to the suppression of the testimony of Scott Briscoe, four (4) year old minor child of alleged victim in this matter in view of the fact that the said Scott Briscoe did not exhibit a sufficient understanding of the proceedings to be considered a competent witness pursuant to R.S. 15:469."
The trial judge has wide discretion in determining the competency of witnesses under twelve years old. State v. Sharp, 338 So.2d 654 (La.1976). When a trial judge has ruled that a child is competent to testify, his ruling will not be disturbed unless testimony brought up shows that the judge manifestly erred. State v. Parker, 181 La. 635, 160 So. 123 (1935), State v. Warlick, 179 La. 997, 155 So. 460 (1934).
It is clear from a reading of the transcript that the child here had little or no conception of time. Defendant argues that this fact coupled with the fact that the defendant and the victim had lived together for a period of time prior to the alleged incident, could easily have led to confusion on whether the events the child testified about occurred on that particular night or at some earlier time. The time element is crucial. The child's testimony placed the defendant in the victim's home on the night of the alleged incident. Were it not for other testimony by him relating to events that occurred after he was awakened, we would have serious reservations about his testimony.
Without prodding, the child clearly remembered going to the police station in his mother's car. His memory of this event provided the time frame for the rest of his testimony. The time frame thus being established, it was up to the jury to determine the weight to be given to the rest of his testimony.[2]
Since other testimony by the child and by others did not show that the judge manifestly erred, this decision of the trial judge will not be disturbed on appeal.
This assignment of error is without merit.

ASSIGNMENTS OF ERROR NOS. 4 AND 5
In these assignments of error, defendant argues that the trial Court erred in denying *1019 his motion for a new trial. He argues in number four that the verdict was contrary to the law and evidence presented because based upon the medical evidence presented by the State it was more probable than not that the alleged victim had not had sexual intercourse for at least four (4) hours prior to the examination by the physician who testified at trial and thus at least three hours prior to the time the alleged victim testified the incident occurred. In number five, he argues that the testimony of his alibi witnesses showed that he was not at the victim's residence at the time of the alleged sexual battery.
In State v. Landry, 381 So.2d 462 (La. 1980), this Court recognized that the scope of review in criminal cases has been altered by the U. S. Supreme Court case of Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). This Court said at page 466:

Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781 [61 L.Ed.2d 560] (1979) appears to dictate a change in our former jurisprudence concerning the scope of review in a criminal matter. Jackson, supra, held that the due process clause of the United States Constitution prohibits conviction of crime except on proof sufficient to convince the trier of fact of the existence of every essential element of the offense beyond a reasonable doubt. Under Jackson, supra, it seems the test may no longer be whether there is some evidence of guilt. Reversal of a conviction is mandated where the proof of guilt is such that no rational trier of fact could find guilt beyond a reasonable doubt.
The doctor's testimony in this case, by itself, may not have convinced a trier of fact of guilt beyond a reasonable doubt. Taken along with the other testimony, however, we are not able to say that no rational trier of fact could have found guilt beyond a reasonable doubt. Nothing in his testimony refuted the victim's testimony and nothing in his testimony clearly absolved the defendant. It was up to the jury to weigh his testimony along with all the rest in determining a verdict. We note again that the trial judge said he would grant a new trial if the defendant presented evidence which would "contradict"[3] the doctor's testimony. We do not have a record of the hearing on the motion for a new trial, but apparently no new evidence was presented.
The testimony of defendant's alibi witnesses, though helpful to defendant, was at times confusing and certainly not conclusive. The jury apparently did not believe some of it or felt that some of it was too confusing to accord to it any significant weight. It is the jury's job to determine the credibility of the testimony, and we will not second-guess them in this case.
Viewing all the evidence given at trial, it appears to have been sufficient for a finder of fact to conclude beyond a reasonable doubt, that the defendant did commit a sexual battery on the victim. See State v. Morgan, 389 So.2d 364 (La.1980).
These assignments of error lack merit.

ASSIGNMENT OF ERROR NO. 7
The seventh assignment of error reads: "The trial court erred in denying the inclusion of the special jury charge requested by the defendant and erred in refusing to grant defendant's motion for new trial based upon the trial court's failure to include the special jury charge requested by defendant..."
The special charge requested reads as follows:
"There is a legal presumption that evidence under the control of a party and not produced by him was not produced because it would not have aided him." (R.S. 15:432).
La.Code Crim.P. art. 807 provides:
"The state and the defendant shall have the right before argument to submit to the court special written charges for the *1020 jury. Such charges may be received by the court in its discretion after argument has begun. The party submitting the charges shall furnish a copy of the charges to the other party when the charges are submitted to the court.
A requested special charge shall be given by the court if it does not require qualification, limitation, or explanation, and if it is wholly correct and pertinent. It need not be given if it is included in the general charge or in another special charge to be given."
Defendant argues that failure to include the charge resulted in prejudice to the defendant because, had the charge been given, the jury may have given greater weight to the fact that the State failed to present certain items as evidence. Those items were, (1) the light bulb which defendant allegedly unscrewed on Debbie Briscoe's porch, (2) the bicycle allegedly used by defendant, and (3) the telephone lines allegedly cut by the defendant. Further, had these items been submitted by the State, (since the Sheriff's office examined the Briscoe premises immediately after the alleged incident occurred), the presence or absence of fingerprints matching Mr. Arnaud's on each of these items could have had a bearing on the verdict.
The officers who investigated the incident could easily have taken these items as evidence. They just as easily could have lifted fingerprints from the items. The fact is that they did not. The jury had the benefit of the testimony of a Sheriff's investigator, Roosevelt Smith, at trial, describing the cut telephone wires. We see little significance in the light bulb or bicycle as evidence.
The important words in R.S. 15:432, relevant to this crime, are "under the control of a party". Here, though the State could have had the evidence under its control, it did not.
We feel that since the State did not have these items under its control that the presumption doesn't apply. A special charge must be given by the judge if it is "wholly correct and pertinent." La.Code Crim.P. art. 807. The presumption here was not wholly correct or pertinent because the items were not under the control of the State.
Whether these items were produced or not goes to the weight of the evidence.
This assignment of error is without merit.
For the above and foregoing reasons, the conviction and sentence are affirmed.
AFFIRMED.
DENNIS, J., concurs.
WATSON, J., concurs but notes that testimony of any child under 8 or 9 years must be judged very carefully.
NOTES
[*] Judges Melvin A. Shortess, Burrell J. Carter and Felix N. Savoie, Jr. of the First Circuit Court of Appeal participated in this decision as Associate Justices Ad Hoc, joined by Associate Justices Dennis, Blanche, Watson and Lemmon.
[1] If this was a problem, why did not counsel for defendant request a recess or a continuance?
[2] R. pp. 81

Q. Well, why did you wake up?
A. My mama was screaming and crying, crying.
Q. Your mama was screaming and crying?
A. Yes.
Q. And when you woke up what did you do?
A. I don't know what thatI didn'tI didn't even remember that one.
Q. When you got up did you, did you see "Kenny Boy" in the house?
A. Yes.
Q. And where was he?
A. I don't remember that one either.
Q. Well, did you tell him anything?
R. pp. 82
A. No.
MR. HEBERT: Your Honor, I'm going to object. I think that possibly he's leading him. He says he doesn't...
THE COURT: Well, the last question wasn't. Try to give him an option.
BY MR. BRINKMAN:
Q. Did you tell him anything?
A. Yes.
Q. What did you tell him?
A. I don't remember that one either.
Q. You don't remember that either. Now, didwhen you saw "Kenny Boy" did he have any clothes on?
A. Yes.
Q. Did he have some pants on?
A. Yes.
Q. Now, after "Kenny Boy" left where did you and your mama go to?
A. To the police station.
Q. The police station. And how did you go to the police station?
A. In mama's car.
Q. In Mama's car?
A. Yes.
Q. Now, when you got up and you saw "Kenny Boy" was your Mama there?
A. Yes.
[3] The term "contradict" is used by the trial judge although the record is clear that he also intended this to mean evidence of fertility of defendant. Such evidence would not necessarily contradict the testimony of the doctor, but could possibly have made his testimony exculpatory.