454 So.2d 1199 (1984)
STATE of Louisiana
v.
Kenny CASIMIER.
No. KA-1706.
Court of Appeal of Louisiana, Fourth Circuit.
July 31, 1984.
*1201 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Mary Charlotte McMullan, Asst. Dist. Atty., New Orleans, for plaintiff-appellee State of La.
George G. Angelus, New Orleans, for defendant-appellant Kenny Casimier.
Before GARRISON, KLEES and WARD, JJ.
KLEES, Judge.
On October 28, 1982, the appellant Kenny Casimier was indicted for aggravated rape in violation of R.S. 14:42. He was arraigned on November 12th and pled not guilty. On March 3, 1983, a twelve member jury found him guilty of sexual battery in violation of R.S. 14:43.1.[1] A pre-sentence investigation was ordered at that time. On April 8, 1983, the appellant's Motion for Post Verdict Judgment of Acquittal and for New Trial were denied, and he was sentenced to serve ten years at hard labor. A Motion for Appeal was filed on April 19, 1983.
FACTS:
Early in the morning of September 5, 1982, Ms. S.C. returned to her home which she shared with her two daughters, one son, and the defendant. The five-year-old daughter was awake and appeared frightened when the mother arrived home, but she would not tell her mother what was troubling her. That evening the mother took the child to Charity Hospital.
*1202 The child was examined at the hospital, where it was found that her hymen was torn but that she had no bruises or lacerations. While at the hospital, the child was interviewed by Ms. Stephanie Bender, a human service worker for the Orleans Parish Child Protection Center. The child told Ms. Bender that she and her "daddy" were "playing booty" the night before, and that he got in bed with her nude and stuck his "weenie" into her between her legs. The child was later interviewed by Det. Arthur Arnolie of N.O.P.D., and she told him basically the same story. Det. Arnolie arrested the defendant that night.
The five-year-old child testified that while her mother was gone, the defendant came into her room nude and got on top of her. She testified that the defendant touched her between the legs with his hand and with his "weenie." She testified that he hurt her and she cried. The defendant told her not to tell anyone what had happened, but she testified that she told her mother and a policeman at the hospital what the defendant had done to her.
The defendant testified that he was the father of all three of Ms. S.C.'s children (contrary to Ms. S.C.'s testimony that the five-year-old was not his daughter). The defendant denied having any sexual contact with the child. He testified that all three children slept in the same room and that the alleged victim stayed in her bed all night.
The defendant's father testified that the day after his son's arrest he and his son's attorney visited Ms. S.C. at her apartment. He testified that Ms. S.C. told them that the child had told her that the defendant had not touched her.
ERRORS PATENT AND SUFFICIENCY OF THE EVIDENCE
A. Errors Patent
A review of the record reveals that the trial court failed to wait twenty-four hours after the denial of the appellant's motion for new trial before sentencing him. The transcript of his sentencing on April 8, 1983 reveals that the appellant did not waive this delay. The Supreme Court has held such error to be harmless unless prejudice is shown by the defendant. State v. Brogdon, 426 So.2d 158 (La.1983); State v. White, 404 So.2d 1202 (La.1981). Because the appellant has not shown any prejudice here and has in fact not even raised this issue, we consider this error harmless.
B. Sufficiency of the Evidence
See assignment of error number six.
C. Assignments of Error

I and II
The appellant's first and second assignments of error concern the competency of the victim to testify at trial. By his first assignment, the appellant alleges that the trial court erred in ruling her competent to testify. By his second assignment, he contends that the trial court erred by failing to ask her questions prepared by defense counsel to determine her understanding and capacity to testify.
The test to determine the competency of a young witness to testify is set forth in R.S. 15:469, which provides:
Understanding, and not age, must determine whether any person tendered as a witness shall be sworn; but no child less than twelve years of age shall, over the objection either of the district attorney or of the defendant, be sworn as a witness, until the court is satisfied, after examination, that such child has sufficient understanding to be a witness.
The Louisiana Supreme Court has long held that the trial judge's determination of the competency of a witness is entitled to great weight on review because the judge has the opportunity to see and hear the witness, State v. Foy, 439 So.2d 433, 435 (La.1983); State v. Edwards, 420 So.2d 663, 677 (La.1982); State v. Humphrey, 412 So.2d 507, 516 (La.1981); State v. Skipper, 387 So.2d 592, 595 (La.1980), and such finding of competency should not be disturbed absent a showing of manifest error. State v. Arnaud, 412 So.2d 1013, 1018 (La. *1203 1982). Unresponsive answers given by the witness do not necessarily indicate incompetency of the witness, especially in light of the intimidation a child may feel at the seriousness of the trial and the formality of the courtroom. State v. Foy, supra; State v. Edwards, supra; State v. Humphrey, supra. The key determination that must be made seems to be whether the witness is able to understand truth from lies and to understand the serious need to relate the truth or suffer the consequences. State v. Foy, supra; State v. Edwards, supra; State v. Humphrey, supra.
Witnesses as young or younger than the victim here have been deemed competent to testify. In State v. Arnaud, supra, the trial court found the four-year-old witness competent to testify even though his conception of time was not good. His testimony as a whole, however, established an adequate time frame for the events he had witnessed. The Court held there was no error in the trial court's finding of competency.
In State v. Skipper, supra, the trial court questioned both the five- and the seven-year-old witnesses about their understanding of the truth and the punishment for lying. In State v. Pace, 301 So.2d 323 (La.1974), the trial court questioned the five-year-old witness on her ability to recognize the truth and her knowledge of the consequences of not telling the truth. The court found the witness to be competent to testify.
In State v. Noble, 342 So.2d 170 (La. 1977), the four-year-old victim testified readily to most questions but then became unresponsive when questions concerning her rape were asked. After a fifteen minute break, the victim again took the stand and then testified as to the rape. The Court found no abuse in the trial court's determination of competency of the victim.
However, in State v. Dykes, 440 So.2d 88 (La.1983), the victim was three years and ten months old at the time of the trial. The transcript of the pre-trial competency hearing was unavailable; thus, the Supreme Court could only review testimony from the trial to determine the victim's competency. This transcript revealed that the victim was vague as to what happened to him and contradicted himself during his testimony. In addition, there was contradictory testimony by another witness. The victim's responses as to his understanding for the need to tell the truth were vague. He also testified that others (including his father) had told him what to say in court. The Supreme Court found this witness to be incompetent to testify and it reversed the defendant's conviction. Id. at 93.
Here, the victim's testimony at the competency hearing and at trial established that she knew she would be punished if she did not tell the truth. Her testimony in chambers at the competency hearing appears to be direct and unhesitating. At trial in the courtroom her testimony, like that of the victim in State v. Noble, supra, faltered when she was asked about the attack on her. Yet between the use of dolls to illustrate the attack and questioning by the prosecutors she was able to tell the jury what had happened to her. Thus, it does not appear that the trial court erred by determining that she was competent to testify at trial. Assignment of error number one is without merit.
The appellant's second assignment is that the court erred by curtailing his examination of the victim and by failing to ask her the thirty-two questions he propounded to establish her competency. Some of these questions concerned her ability to understand the truth and to understand that she must tell the truth. These subjects were adequately covered by the judge's own questions to the child. Other questions dealt with whether she knew that the appellant could be imprisoned for life if found guilty, whether she would be able to tell her story at trial "without making mistakes," and whether she understood exactly what the appellant had done to her.
The trial judge apparently decided not to ask most of these questions because many of them (especially with respect to the nature of the crime and the punishment the *1204 appellant could receive) were irrelevant to the issue of her competency to tell the jury what had happened to her. Although the judge did not ask the child any questions about whether anyone had "rehearsed" her story with her,[2] the defense attorney at trial brought out how many times the child had been to court and had spoken to the prosecutors about the case. We conclude that the trial court did not abuse its discretion by refusing to ask the child the somewhat complex questions propounded by the appellant. See State v. Foy, supra. This assignment also lacks merit.

III
By his third assignment of error, the appellant contends that the trial court erred by allowing three different prosecutors to examine the child during her direct testimony. Although the appellant could cite no authority for this proposition, he alleges that this use of three prosecutors to extract her testimony concerning the attack on her, unduly prejudiced his case because by doing so, the judge implied to the jury that he believed the prosecutor's story and would not quit until the "truth" was heard.
There seems to be no statute of jurisprudence on point. R.S. 15:275 provides:
In the discipline of his court, the trial judge is vested with a sound discretion to stop the prolonged, unnecessary and irrelevant examination of a witness, whether such examination be direct or cross, and even though no objection be urged by counsel.
The Louisiana Supreme Court has held that a trial judge has wide discretion in controlling the examination of witnesses, and a judge's rulings in this regard are to be disturbed only upon a showing of an abuse of this discretion. State v. Murray, 375 So.2d 80 (La.1979); State v. Lewis, 353 So.2d 703 (La.1977).
Here, the trial judge did allow three prosecutors to question the child on direct examination as to the attack on her. It is evident from the record that because of her age she had trouble telling her story, and the judge allowed "repetitive" questioning by the prosecutors merely to obtain her testimony.[3] The appellant's mere allegation of prejudice is not a sufficient showing of abuse on the part of the trial judge. This assignment lacks merit.

IV
By his fourth assignment, the appellant alleges that the trial court erred by permitting the prosecutors to ask the child leading questions to such an extent that they suggested the answers she was to give. The appellant especially points to the child's use of two dolls to demonstrate the attack on her, alleging that the prosecutor's "rehearsal" of this demonstration was unduly suggestive and influenced her testimony.
A "leading question" is defined by R.S. 15:277 as "one which suggests to the witness the answer he is to deliver." Although section 277 limits the use of leading questions to one's own witness only where the witness is unwilling or hostile, the Supreme Court has held that leading questions may be asked during direct examination of certain witnesses, including children. State v. Kahey, 436 So.2d 475, 493 (La.1983); State v. Vanderhoff, 415 So.2d 190, 194 (La.1982); State v. Bolton, 408 So.2d 250, 256 (La.1981). The Court has held:
[l]eading questions are not the type of prosecutorial error which diminish the reliability of a jury's verdict ... [o]nly when there is a clear abuse of discretion which prejudices defendant's rights will *1205 a conviction be reversed because of leading questions.

State v. Felde, 422 So.2d 370, 385 (La. 1982).
See also State v. Vanderhoff, supra; State v. Prestridge, 399 So.2d 564, 573 (La.1981).
In State v. Vanderhoff, supra, the trial court allowed the prosecutor to use leading questions while examining the nine-year-old rape victim. On review the Court noted that without these questions, it was probable that the victim's testimony would not have revealed what happened to her. The Court refused to reverse the defendant's conviction, noting there was no abuse by the trial court in allowing the prosecutor to ask leading questions of "a witness who, because of youth, confusion or otherwise, cannot understand direct questions." Id. at 194.
In State v. Prestridge, supra, the trial court was found not to have abused its discretion by allowing the prosecutor to ask the twelve-year-old victim leading questions. The Court noted the trial judge carefully monitored the questioning, and there was no indication in the record that the witness acquiesced to any false suggestions made by the prosecutor. The Court found no clear abuse by either the prosecutor in asking the questions nor by the trial judge in allowing such questions to be asked. Id. at 573.[4]
Here, the trial judge did monitor the questioning and did warn the prosecutor at least once about the suggestiveness of her question. As in Vanderhoff, it is quite probable that the child would not have been able to testify as to the attack on her without the aid of leading questions. There is no indication that the child acquiesced to any false suggestions made to her by any of the prosecutors. We conclude that the trial judge did not abuse his discretion by allowing the prosecutors to ask the child leading questions. This assignment lacks merit.

V
By his fifth assignment of error, the appellant alleges that the trial court erred by allowing Ms. Bender, the social worker, to testify as to what the child told her about the attack. The appellant contends that the hearsay exception under which the judge allowed Ms. Bender to testify, that of the first complaint of a young rape victim, did not apply to this case because the evidence indicated that the child's mother was the first person to receive her complaint.
The Louisiana Supreme Court has held that the first complaint of a rape victim is an exception to the hearsay rule and as such is admissible at trial. In order for this exception to apply, there must be "no unexplained lapse of time between the rape and the victim's complaint," and the utterance must be spontaneous. State v. Middlebrook, 409 So.2d 588, 590 (La.1982); State v. Hatcher, 372 So.2d 1024, 1031 (La. 1979). The facts and circumstances must show that the statement "was a product of the shocking episode and not a fabrication." State v. Prestridge, supra at 572; State v. Adams, 394 So.2d 1204, 1212 (La. 1981).
The lapse of time between the first opportunity for the victim to make the complaint and the making of the complaint itself seems to be the key factor in deciding whether such statement is admissible. Where the statement is made by the victim at the first opportunity to do so safely, the Court has held that such statement is admissible. In State v. Prestridge, supra, the ten-year-old victim's statement to her babysitter the morning after the attack by her mother's boyfriend was admissible. In State v. Adams, supra, eight to ten hours had elapsed between the attack on the five-year-old victim by her stepfather and her complaint to another adult. The Court held such statement to be admissible because the child appeared to be upset and frightened at the time of the complaint which *1206 was made at the first reasonable opportunity to do so.[5]
In State v. Noble, 342 So.2d 170 (La. 1977), two days elapsed between the attack and the statement of the four-year-old victim to her grandmother telling her what happened. The victim had severe injuries and was hysterical at the time of the statement. The Court held that such statement was admissible because the defendant was living with the victim, and her statement to her grandmother was the first opportunity outside the atmosphere of the home for the victim to confide in someone she trusted. Id. at 173.
In State v. McIntyre, 381 So.2d 408 (La. 1980), US cert. den. 449 U.S. 871, 101 S.Ct. 209, 66 L.Ed.2d 90 (1980), the Court found that the victim's statement made to the coroner who examined her was not admissible because many hours had passed since the attack and the victim had spent time in three different police stations where she reported the rape prior to being examined by the coroner and making her statement to him. The Court ruled, however, that the trial court's error in admitting this statement was harmless due to the fact that it was merely cumulative of other evidence presented at trial which firmly established the defendant's guilt. Id. at 411.
Here, the child told Ms. Bender about the attack the evening after the attack. Although the child's mother testified that the child did not tell her about the attack until after she told Ms. Bender about it in the hospital, there were indications that the mother called the police concerning the attack prior to taking the child to the hospital. However, Det. Arnolie testified that the mother told him that the child would not tell her anything about the attack.
Additionally, appellant contends that the child's statement to Ms. Bender was not made at the first opportunity for her to tell anyone about the attack because she could have told her mother about it. However, it is probable that the child would not want to tell her mother about the attack because the offense was perpetrated by her mother's boyfriend (the appellant). As in Noble, the child's statement to Ms. Bender was made at the first opportunity to confide in someone outside the atmosphere of the home she shared with the appellant. And we conclude that the "first complaint" exception should apply to this case. This assignment is without merit.

VI
By his sixth assignment of error, the appellant contends that there was insufficient evidence to support his conviction for sexual battery. Specifically, he alleges that the prosecution failed to prove that the child was in fear of receiving bodily harm, an essential element of the offense.
In its review of the sufficiency of evidence to support a conviction, the court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Fuller, 414 So.2d 306 (La. 1982).
Sexual battery, as defined by R.S. 14:43.1, includes the touching of the genitals of the victim by the offender using any part of the offender's body, where the victim is not the spouse of the offender and where the offender compels the victim to submit by placing the person in fear of receiving bodily harm. Here, the five-year-old victim testified that the appellant (her *1207 mother's boyfriend) put his "weenie" in her "booty," pointing to the area between her legs. She also testified that the appellant hurt her when he attacked her and made her cry. The passage cited by the appellant in his brief reads:
BY MS. BIZZARRO:
Q ____________ (Name omitted by this court), did Kenny tell you anything when he did this to you?
A (Nods head, indicating yes)
Q What did he tell you?
A Not to tell nobody.
Q Not to tell nobody? Were you afraid?
A Yeah. (Tr. p. 101)
Thus, it appears that the child had already answered the question of what the appellant told her, and the affirmative response she gave to the prosecutor was in answer to the question of whether she was afraid. It appears that all the elements of sexual battery were proven beyond a reasonable doubt. State v. Arnaud, supra. This assignment is without merit.

VII and VIII
By his seventh and eighth assignments of error, the appellant challenges the sentence he received. He alleges that the trial judge erred by not complying with the sentencing guidelines of C.Cr.P. art. 894.1 and by imposing an excessive sentence. The appellant was given the maximum sentence for sexual battery, ten years at hard labor.
Article I, Section 20 of the 1974 Louisiana Constitution prohibits the imposition of excessive punishment. A sentence may be reviewed for excessiveness even though it is within statutory limits. State v. Soco, 441 So.2d 719 (La.1983); State v. Guajardo, 428 So.2d 468 (La.1983); State v. Telsee, 425 So.2d 1251 (La.1983); State v. Bing, 410 So.2d 227 (La.1982); State v. Sepulvado, 367 So.2d 762 (La.1979). Once a sentence is found to be apparently severe, the reviewing court must then look to see if the sentence is excessive with respect to the case at hand. A sentence may be unconstitutionally excessive if it is "grossly out of proportion to the severity of the crime," or "is nothing more than the purposeless and needless imposition of pain and suffering." State v. Telsee, supra, at 1253; State v. Prados, 404 So.2d 925, 926 (La.1981).
The factors used by the trial court in its determination of the sentence imposed must be made apparent to the reviewing court in order to ensure an adequate review of the sentence. C.Cr.P. Art. 894.1[6] sets forth eleven criteria to be used *1208 by the trial court in its sentence determination. Although a full recitation by the trial court of the factors listed in Art. 894.1 in its reasons for sentence is preferable, there is adequate compliance with Art. 894.1 if there is evidence elsewhere in the record that the factors have been considered and that the sentence was tailored to fit the particular defendant and his particular crime. State v. Socco, supra; State v. Telsee, supra; State v. Robinson, 423 So.2d 1053 (La.1982); State v. Bradley, 414 So.2d 724 (La.1982); State v. Washington, 414 So.2d 313 (La.1982).
Here, the judge noted that the pre-sentence investigation report showed the appellant did not have "a bad history." However, the judge noted that the appellant attacked a five-year-old child and could have been found guilty of a much more serious crime. He then sentenced the appellant to serve ten years at hard labor.
The appellant's background was apparently made available to the judge via the pre-sentence investigation report. However, this report is not part of the record before this court because of its confidential nature. Unfortunately, it is extremely difficult for this court to review the trial judge's compliance with Art. 894.1, especially in light of the lack of information contained in the record.
If compliance with Art. 894.1 is found, the reviewing court must then determine whether the sentence imposed is too severe given the circumstances of the case and the background of the defendant. A trial court has great discretion in its sentencing powers, and a sentence should not be set aside by a reviewing court absent a manifest abuse of this discretion. State v. Trahan, 425 So.2d 1222, 1227 (La.1983); State v. Washington, supra; State v. Bing, supra; State v. Bradley, supra. The reviewing court may look to similar cases in that court and other courts to determine a sentence's excessiveness, especially to assure that
maximum sentences are reserved for the most egregious violations and that other offenders of similar conduct will not receive lighter sentences than this defendant. State v. Guajardo, supra at 473; State v. Telsee, supra at 1254.
In State v. Lanclos, 419 So.2d 475 (La. 1982), the defendant was originally charged with aggravated rape but pled guilty to sexual battery. He was twenty years old and had no prior convictions but did have a prior arrest for aggravated rape. He choked and struck the victim, dislocating her jaw. The Court held that his ten year sentence at hard labor was not excessive. Id. at 478.
In State v. Arnaud, supra, the defendant received six years at hard labor. However, his sentence was not considered on appeal.
Here, the appellant sexually attacked a five-year-old girl, but the record contains almost nothing about his background. Thus, it is impossible to tell whether his sentence was tailored to the offense and to his background. Accordingly, for the reasons expressed above we conclude that the appellant's conviction be affirmed. However, the sentence is hereby vacated and this matter is remanded for resentencing in compliance with Art. 894.1.
CONVICTION AFFIRMED SENTENCE VACATED AND CASE REMANDED FOR RESENTENCING.
NOTES
[1] R.S. 14:43.1 provides:

Sexual battery is the intentional engaging in any of the following acts with another person, who is not the spouse of the offender, where the offender compels the other person to submit by placing the person in fear of bodily harm:
(1) The touching of the anus or genitals of the victim by the offender using any instrumentality or any part of the body of the offender; or
(2) The touching of the anus or genitals of the offender by the victim using any instrumentality or any part of the body of the victim.
Whoever commits the crime of sexual battery shall be punished by imprisonment, with or without hard labor, for not more than ten years.
[2] The defense counsel attempted to address this issue at the competency hearing, but the state's objection to this question was essentially sustained.
[3] See State v. Feeback, 414 So.2d 1229 (La.1982), where repetitive questioning was allowed by the trial court where the witness' initial answers were vague and required additional questioning for clarification. Id. at 1235.
[4] See also State v. Carthan, 377 So.2d 308 (La. 1979), where the posing of one leading question to ten-year-old victim by prosecutor was not error where such question was designed to overcome victim's hesitancy in testifying about rape.
[5] See also State v. Hatcher, supra, where the statement of the fourteen-year-old victim who rode the bus home, took a bath, and then told her sister about the attack was admissible; State v. Elzie, 351 So.2d 1174 (La.1977), where the victim's statement was admissible where she dressed and walked to a friend's house to notify the police (she had no telephone) and where she appeared frightened and hysterical; and State v. Pace, 301 So.2d 323 (La.1974), where the five-year-old victim's statement to her parents made later in the day of the attack when the victim arrived home was admissible.
[6] Art. 894.1 provides:

A. When a defendant has been convicted of a felony or misdemeanor, the court should impose a sentence of imprisonment if:
(1) There is an undue risk that during the period of a suspended sentence or a probation the defendant will commit another crime;
(2) The defendant is in need of correctional treatment or a custodial environment that can be provided most effectively by his commitment to an institution; or
B. The following grounds, while not controlling the discretion of the court, shall be accorded weight in its determination of suspension of sentence or probation:
(1) The defendant's criminal conduct neither caused nor threatened serious harm;
(2) The defendant did not contemplate that his criminal conduct would cause or threaten serious harm;
(3) The defendant acted under strong provocation;
(4) There was substantial grounds tending to excuse or justify the defendant's criminal conduct, though failing to establish a defense;
(5) The victim of the defendant's criminal conduct induced or facilitated its commission;
(6) The defendant has compensated or will compensate the victim of his criminal conduct for the damage or injury that he sustained;
(7) The defendant has no history of prior delinquency or criminal activity or has led a law-abiding life for a substantial period of time before the commission of the instant crime;
(8) The defendant's criminal conduct was the result of circumstances unlikely to recur;
(9) The character and attitudes of the defendant indicate that he is unlikely to commit another crime;
(10) The defendant is particularly likely to respond affirmatively to probationary treatment; and
(11) The imprisonment of the defendant would entail excessive hardship to himself or his dependents.
C. The court shall state for the record the considerations taken into account and the factual basis therefor in imposing sentence.