WILLIAMS, Judge.
Romallis Stakes was indicted by the Orleans Parish Grand Jury on September 23, 1987 for the aggravated rape of his four-year old daughter. The defendant elected a non-jury trial and on December 17, 1987 he was found guilty as charged. On January 7, 1988, defendant was sentenced to life imprisonment without benefit of parole, probation or suspension of sentence.
The defendant appeals, assigning as error insufficiency of the evidence to support a conviction of rape.
FACTS
On August 23, 1987, the defendant’s four-year old daughter disclosed to a babysitter that her father had touched her genital area. The babysitter had been instructed by the child’s mother to clean the child. As the sitter was wiping the child’s genital area with a small towel, the child cried and said that the sitter was hurting her. When the babysitter asked if anyone had touched her there, the child replied, “yes, my daddy.” The sitter then informed the child’s older brother and sister and, later, the child’s aunt. On August 24, 1987, the child’s maternal grandmother, with whom the child’s mother was living at the time, took the child to Hotel Dieu Hospital, which referred her to Charity Hospital. Charity Hospital notified the police of a possible sexual assault.
At Charity, the child was examined by Dr. Andrew Meyer. Dr. Meyer testified that the child had vaginal tenderness and multiple hymenal tears located in the three to nine o’clock position of the hymen, consistent with penile penetration. He also noted scratches on the victim’s leg, which she stated were accidentally caused by her brother. Dr. Meyer testified that the victim told him that she had had vaginal intercourse with her father the night before, and that she had demonstrated her father’s actions with anatomically correct dolls, placing the penis of the male doll into the vagina of the female doll. A standard rape kit was allegedly used in the examination of the victim. However, the trial judge did not allow the kit to be opened in court due to insufficient and inaccurate identification markings.
Detective Thomas Harrington was notified of the incident in question by a Dr. Lescale of the Charity Hospital Pediatric Emergency Room. Upon arriving at Charity Hospital, Detective Harrington spoke to the victim, the victim’s brother, sister, grandmother and Dr. Lescale. Based on the information he obtained from the doctor and the victim, Detective Harrington prepared an arrest warrant for the defendant.
After arresting Stakes at his home, Harrington brought the defendant to the Child Abuse Office where he was allowed to call his attorney. Detective Harrington re-interviewed the victim’s brother and sister, this time in the presence of two other detectives, while defendant waited in a back room and out of the sight of the children.
At trial, the victim testified in her own words that her father had penetrated her vagina with his penis. Also, she again used anatomically correct dolls to demonstrate what had taken place. Except for testimony that her brother and sister were *495 at school when the incident occurred, which is questionable, the victim’s testimony was remarkably consistent throughout, despite the fact that she was only two days past her fifth birthday on the day of trial.
Testimony from other family members confirmed that the victim’s parents were separated and that the children had been staying with their father for several days prior to the bathing incident with the babysitter.
The defendant testified in his own defense, stating that he had never sexually assaulted any of his children. In an apparent attempt to explain the results of his daughter’s physical exam, the defendant testified that his daughter sometimes rode on the crossbar of her brother’s bicycle and that he once punished his son (the victim’s brother) for “gyrating” around the victim. He further testified that during visitation he was never alone with the victim but the older children were always present. The defendant also implied that the charges against him were the result of the hostility of his wife and her family, stemming from their marital problems. He stated that his wife’s drug habit and infidelity led to their separation, which in turn led to the hostility-
On rebuttal, the victim’s ten-year-old brother testified that his father, the defendant, had attempted anal intercourse with him several years earlier. The boy testified that his father “told me that it was our secret.”
Errors Patent Review
A review of the record reveals that there are no errors patent.
Assignment of Error
In his sole assignment of error, the defendant contends that there was insufficient competent evidence for a rational trier of fact to conclude beyond a reasonable doubt that a rape had occurred. The defendant argues that the victim lacked the competence to testify and that without her testimony the evidence is insufficient to support the verdict.
The defense, however, has misstated the rule of Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The reviewing court must determine “whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.” Id. at 319, 99 S.Ct. at 2789.
The defendant is correct in stating that without the victim’s testimony the evidence would be insufficient. However, we find that the trial court did not err in finding the victim competent to testify and the evidence is in fact sufficient to support the conviction. We therefore affirm the judgment of the trial court.
The test to determine the competency of a young witness to testify is set forth in R.S. 15:469, which provides:
Understanding, and not age, must determine whether any person tendered as a witness shall be sworn; but no child less than twelve years of age shall, over the objection of either the district attorney or of the defendant, be sworn as a witness, until the court is satisfied, after examination, that such child has sufficient understanding to be a witness.
The Louisiana Supreme Court has long held that the trial judge’s determination of the competency of a witness is entitled to great weight on review because the judge has the opportunity to see and hear the witness. State v. Foy, 439 So.2d 433, 435 (La.1983). Such a finding of competency should not be disturbed absent a showing of manifest error. State v. Arnaud, 412 So.2d 1013, 1018 (La.1982). Unresponsive answers given by the witness do not necessarily indicate incompetency of the witness, especially in light of the intimidation a child may feel at the seriousness of the trial and the formality of the courtroom. State v. Foy, supra. The key determination that must be made is whether the witness is able to understand truth from lies and to understand the serious need to relate the truth or suffer the consequences. State v. Foy, supra.
In State v. Casimier, 454 So.2d 1199 (La.App. 4th Cir.1984), this court found a five-year-old victim of sexual battery competent to testify. In reaching that deci *496 sion, this court relied on the findings in the following cases, as well as the testimony of the victim at the competency hearing and at trial.
In State v. Arnaud, supra, a four-year-old witness was found competent to testify even though his conception of time was not good. His testimony as a whole, however, established an adequate time frame for the events he witnessed. The finding of competency was upheld.
In State v. Pace, 301 So.2d 323 (La.1974), the trial court questioned the five-year-old witness as to her ability to recognize the truth and her knowledge of the consequences of not telling the truth. The witness was found competent to testify.
In State v. Noble, 342 So.2d 170 (La.1977), a four-year-old victim testified readily to most questions, but became unresponsive when asked about her rape. After a fifteen minute break, she again took the stand and then testified as to the rape. The court found no abuse in the trial court’s determination of competency in that case.
In State v. Dykes, 440 So.2d 88 (La.1983), the court did find the victim to be incompetent and reversed the defendant’s conviction. In that case, the victim was three years and ten months old at the time of the trial. The transcript of the pretrial competency hearing was unavailable and the Supreme Court could only review the victim’s trial testimony to determine competency. At trial, the victim was vague as to what happened to him and contradicted himself during this testimony. There was also contradictory testimony by other witnesses. The victim’s responses relative to his understanding of the need to tell the truth were also vague. He also testified that others had told him what to say in court.
In Casimier, supra, the victim’s testimony at the competency hearing was direct and unhesitating and established that she knew she would be punished if she did not tell the truth. Like the victim in State v. Noble, 342 So.2d 170 (La.1977), she faltered at trial when asked about the attack on her. Yet between the use of dolls to illustrate the attack and questioning by the prosecutors, she was able to tell the jury what happened to her. This court found no abuse of discretion.
In the instant ease, the five-year-old victim’s testimony prior to trial and during trial was remarkably direct and consistent. Her ability to understand the importance of telling the truth was also apparent.
The defendant’s contention that the victim thought that her grandmother was God, because she said her prayers to her grandmother, is without merit. Additionally, the victim did not appear to be coached in her testimony to say her father had done “a bad thing,” as defendant contends. It appears that she was simply told “to tell the truth.” The pertinent testimony reads as follows:
Q. No? What about your mommy, did you talk to your mommy about coming to court?
A. Uh-huh.
Q. Did you tell your mommy what you were going to say?
A. Uh-huh. I said, “I’m going to say everything.”
Q. You said you were going to say everything?
A. Uh-huh, so that’s everything.
Q. Did she tell you what to say?
A. Ungh-ungh.
Q. Did she say, “Sheena, be sure to say so-and-so?”
A. (SHAKES HEAD)
Q. What did she tell you be sure to say?
A. She said, “Be sure to tell the truth.”
Q. Okay. Did she tell you to be sure to say your .daddy did a bad thing to you?
A. Huh-huh.
Q. She told you that?
A. Uh-huh.
It appears that, to the victim, telling the truth included saying her daddy “did a bad thing.” The words, “Your daddy did a bad thing,” were supplied by defense counsel alone.
As to the defendant’s contention that this prosecution is the result of disgruntled rel *497 atives, the trial judge noted that the first concern of the child’s grandmother and aunt was for the child: they did not involve the police but simply brought the child to the hospital to determine if there was anything medically wrong with her. In fact, it was the authorities at Charity Hospital that contacted the police.
The trial judge was apparently impressed with the testimony and credibility of the defendant’s son. Finally, the testimony of the other state witnesses was consistent with that of the victim.
There was no error in the trial court’s finding that the victim was competent to testify and, therefore, we find no merit to the defendant's claims that the “competent” evidence was insufficient to support the verdict.
For the reasons discussed above, the judgment of the trial court is affirmed.

AFFIRMED.